| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **DEFENDANTS' MOTION TO DISMISS (DKT. 16)**

**I. Introduction**

Armando Novshadyan and Marina Grantovna Dilanchyan ("Plaintiffs") brought this action in which Sheriff Leroy Baca, Assistant Sheriff Cecil Rhambo, Twin Towers Captain Randy Stover, "Lieutenant Bobo," "Sargent Kirtley" (collectively, the "Individual Defendants"), DOES 1-10 and the County of Los Angeles are named as defendants (collectively, "Defendants"). Plaintiffs are the parents and successors in interest of their son, Albert Novshadyan ("Novshadyan"). While Novshadyan was in custody as a pretrial detainee at the Men's Central Jail in Los Angeles he was killed by an inmate, Ricco Thomas. Plaintiffs contend that Defendants failed to protect Novshadyan from Thomas after Novshadyan reported to deputies that Thomas had assaulted him and threatened to kill him. The Complaint advances three causes of action, pursuant to 42 U.S.C. § 1983: (i) Violation of the Fourth and 14th Amendments and Conspiracy to Violate Constitutional Rights, against the Individual Defendants; (ii) Violation of the Fourth and 14th Amendments, against the County of Los Angeles; (iii) Failure to Train and Supervise, against the Individual Defendants. Compl., Dkt. 1.

On March 24, 2014, Defendants filed a Motion to Dismiss (the "Motion"). Dkt. 16. A hearing on the Motion was conducted on May 5, 2014, and the matter was taken under submission. For the reasons set forth in this Order, the Motion is GRANTED IN PART. The first and second causes of action are DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend. The third cause of action is DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend, as to Rhambo, Stover, Bobo and Kirtley.

**II. Factual and Procedural Background**

On Friday, February 24, 2012, Novshadyan was assaulted by inmate Ricco Thomas at Men's Central Jail. Dkt. 1, ¶ 7. Thomas was serving a sentence for a "felony crime of violence and had been repeatedly convicted of violent crimes against the public, custodial officials and on other inmates in various state prisons where Thomas had been previously incarcerated." *Id*. Plaintiffs contend that, notwithstanding his violent record, Thomas had been designated a "pod trustee," was housed with Novshadyan and was permitted to be in the medical infirmary with him. *Id*. Thomas assaulted Novshadyan "in an attempted robbery of [Novshodyan's] 'commissary store.'" *Id*. Other inmates intervened to end the assault.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

Novshadyan and the inmates who had intervened reported to DOES 1-5 that Thomas had assaulted him and had made "threats to kill [him] as well as the inmates who had protected [him] from Thomas' predatory behavior." *Id.*

Following the incident, Thomas and Novshadyan "were returned to their respective cells but not separated from having contact with one another notwithstanding Novshadyan's pleas to DOES 1-5 to separate and rehouse him." *Id.* The following morning, February 25, 2012, Thomas "murdered Novshadyan by repeatedly bashing [his] head against the concrete floor of the jail in the presence of DOES 1-8." *Id.* Three Custodial Assistants "attempted to rescue Novshadyan." *Id.* Shortly thereafter, "DOE deputies 1-10 entered the area," seized Thomas, and sought medical attention for Novshadyan. Novshadyan was transferred to County USC Medical Center, but remained in a coma and died on February 28, 2012. *Id.* Thomas was subsequently convicted "for the murder." *Id.*

Plaintiffs contend that the Individual Defendants "knew or should have known of Thomas' violent rages and avowed reprisals against Novshadyan which were foreseeable and preventable but failed to insure [sic] the safety of Novshadyan . . . recklessly [leaving] Thomas in a position to resume his attack upon Novshadyan, killing him." *Id.* Plaintiffs further contend that the Individual Defendants' failure to protect Novshadyan was the result of longstanding customs or policies of Los Angeles County with respect to the operation of jails in the County. *Id.* at ¶ 17.

### III. Analysis

#### A. Legal Standard

To withstand a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

#### B. Application

##### 1. First Cause of Action: Violation of Fourth and 14th Amendments and Conspiracy to Violate Constitutional Rights

###### a. Whether the Fourth Amendment Claim is Adequately Pleaded

Plaintiffs allege that the Individual Defendants "intentionally deprived Plaintiff's [sic] and plaintiff's [sic] decedent of rights secured to them by the Fourth and 14th Amendments." Dkt. 1, ¶ 10. A claim for failure to protect a pretrial, pre-arraignment detainee from violence by other inmates arises under the Due Process Clause of the 14th Amendment. The Ninth Circuit has held that analogous claims, such as those by pre-arraignment detainees for deliberate indifference to serious medical needs, arise under the Due Process Clause of the 14th Amendment. *See Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

2003); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002). Like the claims in *Lolli* and *Gibson*, Plaintiffs' claim is based on alleged "deliberate indifference" by prison officials to serious, life-threatening conditions. Dkt. 22 at 6-8.

Further, a claim that an officer who effected a seizure of an individual failed to protect him or her from harm outside of the jail context arises under the Due Process Clause of the 14th Amendment . *Munger v. Glasgow Police Dep't,* 227 F.3d 1082, 1085 (9th Cir. 2000). Thus, under the 14th Amendment, "a duty to protect arises where a police officer takes affirmative steps that increase the risk of danger to an individual." *Id.* at 1089. There is no basis to conclude that the duty arises under the Fourth Amendment once an individual is placed into custody at a jail. Therefore, although a "seizure" continues through pre-arraignment custody, *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996), a claim for "failure to protect" during a seizure arises under the 14th, rather than the Fourth Amendment.

For these reasons, the first cause of action for violation of the Fourth Amendment is DISMISSED WITHOUT PREJUDICE, *i.e.,* with leave to amend.

> b. Whether the 14th Amendment Claim is Adequately Pleaded

The failure to protect a pretrial detainee may violate that person's due process rights under the 14th Amendment where the failure reflects "deliberate indifference." *Redman v. County of San Diego,* 942 F.2d 1435, 1442 (9th Cir. 1991). The standard for "deliberate indifference" under the 14th Amendment is the same as that applied to claims by convicted inmates arising under the Eighth Amendment. *Id.* At the hearing on the Motion, Plaintiffs' counsel argued that the Eighth Amendment standard for "deliberate indifference" does not apply in this action because Novshadyan had not been convicted of a crime at the time of the events underlying this action. However,

> [t]hat 'deliberate indifference' is the standard used to measure violations of the [E]ighth [A]mendment's proscription of cruel and unusual punishment does not mean it applies only to persons who may be punished. [One's] status as a pre-trial detainee who may not be punished, therefore, does not preclude application of the standard. We do not find it inappropriate that the same standard may be used under the fourteenth and eighth amendments.

*Id. See also Gibson*, 290 F.3d at 1188 ("With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.").[1]

A determination that the failure to protect constitutes deliberate indifference "requires a finding of some degree of individual culpability, but does not require an express intent to punish." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). A plaintiff is not required to show that an officer "believe[d] to a moral

---

[1] Plaintiffs rely on *Redman* in their Opposition to the Motion. Dkt. 22, at 6, 12. That case, which concerned the alleged "failure to protect" a pretrial detainee from violence from inmates, was held to arise under the Due Process Clause of the 14th Amendment, and applied the "deliberate indifference" standard used in cases arising under the Eighth Amendment.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-00814 JAK (SHx) | | Date | May 16, 2014 |
|---|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | | |

certainty that one inmate intend[ed] to attack another at a given place at a time certain." *Id.* However, a plaintiff must show that the officer had "more than a mere suspicion that an attack [would] occur." *Id.*

Here, Plaintiffs do not identify what alleged conduct forms the basis for the first cause of action. The "allegations common to all causes of action" include that the Individual Defendants: (i) knew or should have known that Thomas had previously engaged in multiple attacks and fights with inmates while designated as a "pod trustee" at the jail; and (ii) knew of "Thomas' violent rages and avowed reprisals against Novshadyan . . . but failed to" provide for his safety. Dkt. 1, ¶ 7. Such conduct, if proven, would constitute deliberate indifference from which a claim would arise under the Due Process Clause of the 14th Amendment. *See Redman*, 942 F.2d at 1439.

Plaintiffs do not, however, allege sufficient facts to give rise to the plausible inference that any of the Individual Defendants knew or should have known of Thomas' prior fights or of the threats he made to Novshadyan. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79. Plaintiffs allege that Novshadyan made "pleas to DOES 1-5 to separate and rehouse him." *Id.* Plaintiffs allege that, notwithstanding his "pleas," Novshadyan was not separated from Thomas, and "no jail employee commenced a reclassification effort or acted on the notifications of the deadly threats." *Id.* However, they do not specifically allege that the pleas made to DOES 1-5 were communicated, or as a matter of practice would have been communicated, to any of the Individual Defendants. For these reasons, the first cause of action does not adequately allege that any of the Individual Defendants was deliberately indifferent. Thus, it does not allege a factual basis for a finding that any of them had "more than a mere suspicion that an attack [would] occur." *Berg,* 794 F.2d at 459.[2]

In their opposition to the Motion, Plaintiffs argue that whether Baca or Rhambo "knew of the existence of Albert Novshadyan . . . is irrelevant." Dkt. 22, at 7. Plaintiffs contend that the first cause of action seeks to hold the Individual Defendants liable for their failure "to correct known conditions in the Los Angeles County jails that violated the constitution." Dkt. 22, at 6. However, neither the first cause of action, nor the "allegations common to all causes of action" refers to unconstitutional conditions in the jails, or the alleged failure of the Individual Defendants to correct them. Those allegations are advanced only in the third cause of action in support of Plaintiffs' claim for supervisory liability. Dkt. 1, ¶¶ 23-47. Accordingly, they cannot form the basis for the claims advanced in the first cause of action. Further, to the extent the first cause of action is one for supervisory liability, as Plaintiffs contend in their Opposition (Dkt. 22, at 6), it duplicates the third cause of action.

---

[2] The allegations in the first cause of action are sufficient with respect to certain of the non-moving DOE defendants. Plaintiffs allege that those unidentified defendants failed to protect Novshadyan from Thomas after they were informed that Thomas had assaulted him and had made threats against his life. *See Berg*, 794 F.2d at 459. That allegation provides a sufficient factual basis to state a claim for failure to protect in violation of the Fourteenth Amendment against DOES 1-5. Plaintiffs also allege that Thomas "murdered Novshadyan by repeatedly bashing [his] head against the concrete floor of the jail in the presence of DOES 1-8." *Id.* However, Plaintiffs then allege that DOES 1-10 "entered the area in which the attack took place" shortly after three Custodial Assistants attempted to intervene to "rescue Novshadyan." *Id.* Thus, it is not clear whether Plaintiffs allege that DOES 1-8 were present during the incident, but failed to intervene.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

For these reasons, the first cause of action for violation of the 14th Amendment is DISMISSED WITHOUT PREJUDICE, i.e., with leave to amend.

  2.  <u>Second Cause of Action: *Monell* Liability</u>

Plaintiffs allege that the County of Los Angeles is liable for the failure to protect Novshadyan because it was the result of "customs, practices and usages" maintained by the County. Dkt. 1, ¶¶ 20, 22. A municipality can be held liable for a constitutional violation under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Srvcs. of City of N.Y.*, 436 U.S. 658, 691 (1978). "[A] custom or practice can be 'inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or remanded.'" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001)). A policy may also be created by a single action where the decision to take such action is made by a "decisionmaker [who] possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

Defendants contend that the "Complaint is devoid of any facts showing the existence of an unconstitutional municipal custom, practice or policy that was the moving force behind the alleged constitutional deprivations." Dkt. 16, at 16. Defendants also contend that "there are no allegations that a municipal policymaker either helped formulate the alleged custom or practice or was aware that such informal policy existed." *Id*. at 17. Plaintiffs respond that the failure to protect Novshadyan was caused by 12 "widespread practices" maintained by the County that rise to the level of a "custom or practice" under *Monell*.

Seven of the alleged "widespread practices" refer generally to the failure to provide adequate security to inmates, supervise deputies or address deputy misconduct. Dkt. 1, ¶ 20(2)-(8). For example, the Complaint alleges that the County maintained a custom or policy of "fail[ing] to provide reasonable security and/or prevent abuse of inmates by other inmates." *Id*. at ¶ 20(3). Such generalized descriptions of alleged policies or customs are insufficient to give rise to the plausible inference that any of them was "so closely related to Plaintiff[s'] injury that it was the moving force causing [the] injury." *Hunter*, 652 F.3d at 1228. Thus, Plaintiffs do not specifically allege how the County's widespread failure to provide security, supervise deputies or address deputy misconduct, led to the incidents underlying this action.

Two of the alleged "widespread practices" are unrelated to the incidents underlying this action. Plaintiffs allege that the County maintained a custom or practice of "fail[ing] to implement competent and appropriate policies and procedures regarding supervision of gates and control of gates," and of "fail[ing] to comply with policies and procedures related to the inmate identification." *Id*. at ¶ 20(9), (12). However, Plaintiffs do not allege that the attacks against Novshadyan were related to the operation of gates, or inmate identification.

Two of the other alleged practices are not supported by a sufficient factual basis from which it can be inferred that they were the moving force behind the alleged constitutional violation. Plaintiffs allege that

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

the County maintained a custom or practice of "fail[ing] to enforce policies and procedures regarding the use and designation of inmate trustees" and "fail[ing] to implement policies and procedures for the appropriate designation of inmate workers as trustees" (*Id.* at ¶ 20(10)-(11)). Plaintiffs allege that Thomas was improperly designated as a "pod trustee" notwithstanding his history of violence. *Id.* at ¶ 7. However, Plaintiffs do not allege that the fact that Thomas was a "pod trustee" was a moving force behind the assaults on February 24, 2012 or February 25, 2012. Plaintiffs do not allege, for example, that this status enabled Thomas to come into contact with Novshadyan at a particular time or place, or to obtain certain materials that were used as weapons in the assault.

One of the 12 alleged customs or practices is presented with adequate specificity, and is supported by sufficient facts from which it can be inferred that it was the moving force behind the claimed constitutional violation. Plaintiffs allege that the County maintained a custom or practice of "[i]mproper classification and housing of inmates." *Id.* at ¶ 20(1). They also allege that, although Thomas had been convicted of multiple violent crimes, including against other inmates, he was "inappropriately classified so as to be permitted in the Twin Towers medical infirmary" with Novshadyan, where the initial assault occurred. *Id.* at ¶ 7. Further, after Novshadyan reported Thomas' threats against his life to DOES 1-5, he was not separated and rehoused, and "no jail employee commenced a reclassification effort." *Id.* As a result, the following morning, Thomas was able to attack and kill Novshadyan.

Plaintiffs do not, however, adequately allege, in the second cause of action, a factual basis from which it can plausibly be inferred that the "[i]mproper classification and housing of inmates" was sufficiently widespread to constitute a municipal policy or custom.[3] In the third cause of action, which is discussed below, Plaintiffs describe several prior incidents in the Los Angeles County jails in which the "[i]mproper classification and housing of inmates" resulted in inmate-on-inmate attacks, and in response to which no disciplinary action was taken. *Id.* at ¶ 37-39. In that same cause of action, Plaintiffs allege that, on February 3, 2005, Special Counsel Merrick Bobb presented to Baca and the public a report that "criticized the jail for failing to prevent dangerous inmates from being housed with lower-risk inmates." *Id.* at ¶ 41.

Those allegations may set forth sufficient "widespread practices" and "repeated constitutional violations for which the errant municipal officers were not discharged or remanded" to form the basis for a claim for municipal liability under *Monell*. *Hunter*, 652 F.3d at 1233. However, because those allegations are not advanced in the second cause of action, there is not a sufficient factual basis there for the allegation that the County maintained a policy or custom of improperly classifying and housing inmates. Accordingly, the second cause of action is DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend.

        3.      <u>Third Cause of Action: Failure to Train and Supervise</u>

Plaintiffs allege that the Individual Defendants failed adequately to train and supervise their subordinates, and "fail[ed] to act to prevent constitutional misconduct by subordinates." Dkt. 1, ¶ 24. Plaintiffs allege that

---

[3] Plaintiffs also fail adequately to allege, in the second cause of action, a factual basis from which it can plausibly be inferred that the "[i]mproper classification and housing of inmates" was conducted pursuant to a decision made by Baca in his capacity as a final decisionmaker. *Pembaur*, 475 U.S. at 481. The second cause of action does not allege, for example, that Baca approved the classification of Thomas, or of the general practice of improperly classifying or housing violent inmates.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | | Date | May 16, 2014 |
|---|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | | |

the Individual Defendants "knew or should have known of the failure to provide reasonable security at the jail, failure to prevent inmate on inmate violence, failure to monitor inmates, failure to investigate by subordinate supervisors and [failure] to oversee the competent use of inmates as trustees." Dkt. 1, ¶ 24.

A supervisor can be held liable in his or her individual capacity for constitutional violations committed by others if he or she "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). Liability may be imposed for the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).

Defendants contend that Plaintiffs have failed to allege the specific acts or omissions on which their claim for supervisory liability is based. Dkt. 16, at 18. With respect to Baca and Rhambo, Defendants also contend that Plaintiffs do not "set forth sufficient facts to show why [either was] the moving force behind [the] alleged constitutional violation." Dkt. 27, at 3. Defendants contend that Plaintiffs allege only that Baca was aware of a "general history of violence" in the Los Angeles County jails. *Id*. Defendants then argue that, "[b]y plaintiffs' reasoning, Baca and Rhambo should be held liable in their personal capacity for each and every allegedly unconstitutional act or inmate-on-inmate attack which takes place at Los Angeles County jails." *Id*. at 5.

        a.    Whether Supervisory Liability is Adequately Alleged as to Stover, Bobo, Kirtley and Rhambo

Plaintiffs do not allege sufficient facts to state a claim for supervisory relief with respect to Stover, Bobo, Kirtley and Rhambo. As to each of those defendants, Plaintiffs allege generally that he "should have known of [his] subordinates['] ongoing constitutional violations . . ." Dkt. 1, ¶ 24. As to Rhambo, Plaintiffs allege that he knew of the "failure to properly provide reasonable security to inmates from one another," and of "deaths and injuries in the jails," and yet he "failed to take corrective action." *Id*. at ¶¶ 26, 27, 29.[4] However, Plaintiffs do not present with sufficient detail the misconduct or ongoing violations occurring in the Los Angeles County jails about which Stover, Bobo, Kirtley and Rhambo allegedly knew or should have known. Nor do Plaintiffs allege a factual basis to infer that the failure by these defendants to address such violations was the moving force behind the incidents that underlie this action. For these reasons, the third cause of action as to these defendants is DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend.

---

[4] Plaintiffs contend that they "listed multiple facts and events implicating Baca and Rhambo in paragraphs 32-46" of the Complaint. Dkt. 22, at 7. However, Rhambo is not named in paragraphs 32-45 of the Complaint. Dkt. 1, ¶¶ 32-45. He is named in paragraph 46, in which it is alleged that he was identified in a report by the Citizens Commission on Jail Violence "for mis-management of the jails along with his failure to hold employees responsible for violations accountable." *Id*. at ¶ 46. As with the other allegations against Rhambo, this one does not provide a basis from which it can be inferred that his conduct was the moving force behind the events underlying this action.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

      b.      Whether Supervisory Liability is Adequately Alleged as to Baca

Plaintiffs contend that Baca "knew of unconstitutional conditions present in the jails based . . . on the numerous homicides and other violent attacks taking place within the jails," and multiple reports from Government agencies documenting serious violations in the jails. Dkt. 22, at 13. As discussed above, general allegations with respect to "unconstitutional conditions" and the occurrence of violent attacks at the jail in the years preceding the incidents that underlie this action are not sufficient to state a claim for supervisory liability. However, Plaintiffs also specifically allege that Baca was aware of, and failed to correct, two categories of misconduct by his subordinates at Los Angeles County jails, and that these failures were the moving force behind the alleged constitutional violations.

      (1)      Misclassification of Violent Inmates

Plaintiffs allege that Baca knew that inmates were frequently misclassified in Los Angeles County jails, leading to several assaults by or against such inmates. Specifically, Plaintiffs allege that Baca knew of the report from Special Counsel Merrick Bobb, discussed above, which "criticized the jail for failing to prevent dangerous inmates from being housed with lower-risk inmates." *Id.* at ¶ 41.

Plaintiffs also allege that Baca knew of several specific instances in which inmates had been assaulted or killed by other inmates as a result of such misclassifications. Specifically, Plaintiffs allege that, on December 13, 2003, Jose Beas was severely attacked after being placed in the general population, notwithstanding that he "had allegedly admitted to crimes against a minor," and therefore should have received "stay away classification." *Id.* at ¶ 37. They allege that "Baca knew of the incident, approved a civil settlement thereof and failed to hold any employee responsible for their wrongful misconduct leading to the assault." *Id.*

On January 12, 2004, Plaintiffs allege that Kristopher Faye was killed by several inmates with whom he was improperly housed notwithstanding their "recognized propensities to violence." *Id.* at ¶ 38. They allege that "Baca was made aware of the inmate misclassifications and housing and took no action to discipline or prosecute" any responsible employees. *Id.* On April 20, 2004, Plaintiffs allege that Raul Tinjero was killed in his cell by his cellmate Santiago Pineda, who had a "known history of violence in the jails which was ignored by jail personnel who allowed Pineda to kill Tinjero from whom he was required to be separated." *Id.* at ¶ 39. They allege that "[m]isconduct by jail employees [was] identified . . . [and] Baca was notified of these circumstances and failed to take any appropriate measures against any of the jail employees responsible." *Id.*

Plaintiffs allege that Baca's failure to take action to address the widespread misclassification of violent inmates, despite his knowledge of these incidents and the "Bobb Report," was the moving force behind the events underlying this action. Thus, although Thomas had been convicted multiple times of violent crimes, including against inmates, Plaintiffs allege that he was "inappropriately classified so as to be permitted in the Twin Towers medical infirmary" with Novshadyan, where the initial assault occurred. *Id.* at ¶ 7. Further, after Novshadyan reported the threats that Thomas made to DOES 1-5, Thomas was not separated and rehoused, and "no jail employee commenced a reclassification effort." *Id.* As a result, the following morning, Thomas was able to assault and kill him. For these reasons, the third cause of action is adequately pleaded as to Baca.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

(2) Understaffing and Deputies Abandoning Posts

Plaintiffs allege that Baca knew that jails in Los Angeles County were understaffed, and that guards at times abandoned their posts, leaving inmates unsupervised. Specifically, the report provided to Baca by Special Counsel Merrick Bobb stated that, "the County jail is 'understaffed' [and] suffer[s] from 'lax supervision and long-standing jail culture that has shortchanged accountability for inmate safety and security.'" *Id.* at ¶ 41. Further, Plaintiffs allege that Baca was notified by the "Office of Independent Review" in 2007 that "deputies continued to abandon their jail posts . . . failed to conduct timely security checks . . . [and] left inmates unsupervised." *Id.* at ¶ 44.

Plaintiffs also allege that Baca knew of several instances in which inmates had been severely assaulted by other inmates as a result of understaffing and deputies leaving their assigned posts. Specifically, on December 9, 2003, Plaintiffs allege that Mario Alvarado was killed by other inmates who were "left without oversight or supervision for sufficient time to conceal Alvarado's body." *Id.* at ¶ 36. Plaintiffs allege that an "[i]nvestigation reported to Baca of this homicide resulted in no discipline or prosecutions of employees" who had committed violations. *Id.* On May 23, 2004, Plaintiffs allege that Antonio Fernandez was killed by other inmates when "the deputy assigned to monitor Fernandez's dormitory abandoned her post." *Id.* at ¶ 40. Plaintiffs allege that "[t]hese failures by jail employees were reported to Baca who took no remedial disciplinary or prosecutorial action against his subordinates that caused the death of Fernandez." *Id.*

Plaintiffs also contend that Baca's failure to address understaffing or the problem of deputies leaving their assigned posts was the moving force behind the events underlying this action. They allege that Thomas killed Novshadyan by "repeatedly bashing [his] head against the concrete floor of the jail," and was able to "continue[] his homicidal assault until 3 female Custodial Assistants . . . attempted to rescue Novshadyan. Shortly thereafter, DOE deputies 1-10 entered the area in which the attack took place and attended to Novshadyan and seized Thomas." *Id.* at ¶ 7.[5] Thus, Plaintiffs allege that Thomas was able to make a prolonged attack before any deputies entered into the area. It is plausible to infer from these allegations that the moving force behind the events underlying this action included Baca's failure to address understaffing, and/or his tolerance of lax supervision and the abandonment of posts by deputies.

For this additional reason, the third cause of action is adequately pleaded as to Baca, and the Motion is DENIED as to this aspect of that claim.

---

[5] The Complaint alleges that the assault on February 25, 2014, took place "in the presence of DOES 1-8." Dkt. 1, ¶ 7. However, the Complaint also alleges that "DOE deputies 1-10 entered the area where the attack took place" only after the "3 female Custodial Assistants . . . attempted to rescue Novshadyan." *Id.* To the extent Plaintiffs allege that DOES 1-8 were present during the assault on February 25, the Complaint does not adequately allege that either understaffing or abandonment of posts was the moving force behind that assault. Accordingly, should Plaintiffs seek to proceed on this claim, in any amended pleading, they must include additional and specific facts, alleged in good faith, to address this inconsistency.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-00814 JAK (SHx) | Date | May 16, 2014 |
|---|---|---|---|
| Title | Armando Novshadyan, et al. v. County of Los Angeles, et al. | | |

## IV. Conclusion

For the reasons set forth above, the Motion is GRANTED IN PART. The first and second causes of action are DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend. The third cause of action is DISMISSED WITHOUT PREJUDICE, *i.e.*, with leave to amend, as to Rhambo, Stover, Bobo and Kirtley. Any amended complaint shall be filed within 14 days of the issuance of this Order.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |